IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ADVANCED TACTICAL ORDNANCE SYSTEMS, LLC an Indiana Limited Liability Company (d/b/a PepperBall Technologies) )<br><br>Plaintiff, )<br><br>vs. )<br><br>REAL ACTION PAINTBALL, INC, a California Corporation, APON INDUSTRIES CORP., a California Corporation, APON INTERNATIONAL GROUP, Inc, a California Corporation, K.T. TRAN, individually, CONRAD SUN, individually, John Does 1-5 )<br><br>Defendant. ) | No. 1 : 12 C V 2 9 6 JVB |

## COMPLAINT

Now comes Plaintiff, ADVANCED TACTICAL ORDNANCE SYSTEMS, LLC (herein "ATO"), by and through its attorneys, the law firms of Milton M. Blumenthal & Associates and Snyder Morgan LLP, and for its Complaint, states as follows:

1. This lawsuit involves claims for: numerous intentional violations of the Lanham Act (15 U.S.C. § 1111 et seq.), common law trademark infringement and unfair competition, conversion, and breach of contract. The lawsuit is based on the fact that Defendant CONRAD SUN misappropriated trade secrets belonging to ATO while he was the Chief Operating Officer of a company bought by ATO. Defendant CONRAD SUN in the six-to-twelve months leading up to the acquisition of PepperBall Technologies Inc. by ATO used his position to convert ATO's trade secrets (including PepperBall Technologies' PepperBall® projectile

1

powder formulas, projectile shell design, and customer lists) and conspired with Defendants APON INDUSTRIES CORP. and APON INDUSTRIES GROUP, INC. to produce counterfeit PepperBall® projectiles. Having converted ATO's trade secrets, Defendants SUN and APON approached Defendants REAL ACTION PAINTBALL, INC., (herein "RAP4") and its President, Defendant K.T. TRAN, to sell counterfeit PepperBall® projectiles. Upon ATO's informing Defendants RAP4 and TRAN that they were infringing on ATO's trademarks, and could not have lawfully received access to ATO's trade secrets, Defendants RAP4 and TRAN refused to cease and desist their sale of counterfeit PepperBall® projectiles except on extortionate terms.

## Parties

2.  ATO is an Indiana limited liability company that is headquartered in Fort Wayne, Indiana. ATO (formerly known as Phoenix International, LLC) acquired all of the assets of PepperBall Technologies, Inc. (f/k/a Jaycor Tactical Systems., Inc.) when it purchased and foreclosed on PepperBall Technologies' outstanding notes. ATO and its predecessors have sold and continue to sell PepperBall® Projectiles and related PepperBall branded equipment to customers across the United States and around the world.

3.  Defendant CONRAD SUN on information and belief is currently a citizen of California. Defendant SUN was the former Chief Operating Officer of PepperBall Technologies.

4.  Defendants, APON INDUSTRIES CORP. and APON INDUSTRIES GROUP, INC. (herein collectively referred to as "APON"), are citizens of California. On information and belief, APON INDUSTRIES CORP. and APON INDUSTRIES GROUP, INC. are the

members of the APON corporate family that are conspiring with the other Defendants to manufacture and sell counterfeit PepperBall® projectiles.

5. Defendant RAP4 is a citizen of California.

6. On information and belief, Defendant K.T. TRAN, (herein "TRAN") is a citizen of California and the chief executive officer for RAP4.

7. John Does 1-5 are as yet unidentified co-conspirators in the Defendants' infringement scheme, including a manufacturer in Mexicali, Mexico that is being used by the Defendants in order to evade this Court's jurisdiction and liability for their willful infringement of Plaintiff's trademarks.

## Venue and Jurisdiction

8. This Court has jurisdiction over the parties to this lawsuit pursuant to Indiana's long-arm statute embodied in Indiana Trial Rule 4.4. Each of the Defendants have engaged in conduct resulting in at least one of the following: doing any business in Indiana and engaging in acts outside of Indiana that caused damage in Indiana while deriving substantial revenue from goods sold in Indiana. Indiana's long-arm statute also includes the standard catchall provision allowing Indiana courts to exercise jurisdiction "on any basis not inconsistent with the Constitutions of this state or the United States."

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and there is more than $75,000.00 in controversy, exclusive of interest and costs. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 since one of the claims involves a federal question and the Lanham Act (15 U.S.C. § 1111 et seq. explicitly provides for this Court with jurisdiction over claims involving

trademark. *See* 15 U.S.C. § 1111(a).

10. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) & (b)(3) as the trade secrets that have been misappropriated are owned by and located in Indiana, as are the documents and a substantial amount of the evidence relevant to this matter. Further there is no district in which all four Defendants are subject to a district court's jurisdiction.

## General Allegations

11. ATO manufactures proprietary projectiles that are designed to allow individuals engaged in law enforcement, military, and private security to use less than lethal force to prevent crimes. These projectiles are similar to paintballs, but contain an irritant powder that acts similar to pepper spray.

12. ATO purchased the notes of PepperBall Technologies, Inc., and foreclosed on the notes. ATO has retained all of the assets of PepperBall Technologies, Inc. PepperBall Technologies, Inc.'s primary assets were: its proprietary formulas for the powder that is loaded into PepperBall's proprietary shells and PepperBall's customer list.

13. PepperBall Technologies had spent years and hundreds of thousands of dollars to develop each of these assets, and took all the required steps to protect these assets, including dispersing the manufacturing and assembly of PepperBall® projectiles, keeping the documents as secure as possible given on-going business considerations, and requiring employees to sign Non-Disclosure Agreements.

14. Defendant APON was one of two companies used to assemble PepperBall® projectiles prior to PepperBall Technologies, Inc.'s acquisition by ATO. Defendant APON did not have the knowledge to make any component of PepperBall® projectiles.

15. Defendant SUN was the COO of PepperBall Technologies, Inc. until it was foreclosed on by ATO. Unbeknownst to ATO at the time of its purchase and foreclosure on PepperBall Technologies, Inc., Defendant SUN had begun converting PepperBall Technologies, Inc.'s trade secrets. As COO he used his access to PepperBall Technologies, Inc.'s engineering staff to obtain the formula for both the normal (standard strength) and maximum strength projectiles as well as the projectile mold design.

16. Defendant SUN forwarded the mold designs to Defendant APON so that the latter could begin working on duplicating ATO's projectile's qualities in the projectiles they would begin making. Defendant APON never had access to PepperBall Technologies, Inc.'s molds and was unable to recreate molds that would produce projectiles with identical properties to PepperBall Technologies, Inc.'s projectiles.

17. In the last few days prior to PepperBall Technologies, Inc.'s foreclosure, Defendant SUN used his position as COO to obtain PepperBall Technologies, Inc.'s customer list. Armed with substantially all of PepperBall Technologies, Inc.'s trade secrets, Defendant SUN set out to open a competing PepperBall® company which he had been planning with Defendant APON.

18. On information and belief, Defendants SUN and APON approached Defendants RAP4 and TRAN with a proposal to sell RAP4 PepperBall projectiles. In addition to selling PepperBall® projectiles to law enforcement, military, and private security, Defendants SUN and APON proposed the sale of these items to any individual or entity willing to purchase these items. Defendants RAP4 and TRAN accepted Defendants SUN's and APON's offer.

19. During the second week of August 2012, ATO's officer along with several

residents of Indiana received an e-mail from Defendant RAP4 which claimed that RAP4 was selling PepperBall® projectiles. The e-mail claimed that PepperBall Technologies, Inc. was *inter alia* no longer making PepperBall® projectiles, but that Defendant RAP4 had obtained the "machinery, recipes, and materials once used by PepperBall Technologies Inc." Within days of the e-mail being sent out, ATO began receiving e-mails and phone calls from customers concerned that *inter alia* ATO had gone out of business, that they could only obtain PepperBall® projectiles from Defendant RAP4, and whether it was true that RAP4 was selling "PepperBalls" a registered trademarked product.

20. Upon receiving this false e-mail that was sent to many, if not all, of ATO's customers, ATO contacted Defendants RAP4 and TRAN directly and through counsel and demanded that Defendants RAP4 and TRAN *inter alia*: remove these false statements from Defendant RAP4's website, publish a retraction, cease and desist from further sale of counterfeit PepperBall® projectiles that were being obtained from APON and sold across the United States and around the world.

21. After ATO stated that Defendant SUN had stolen ATO's trade secrets, and in any event could not have provided Defendant APON with the machinery used to make PepperBall® projectiles, Defendant RAP4 published a second misleading statement on its website and via e-mail claiming *inter alia* that "RAP4 Less Lethal Live Rounds are produced by the original OEM manufacturer that once produced for PepperBall Technologies Inc…RAP4 and original OEM manufacturer have been able to team up and have improved the formula and process for making Less Lethal Live Rounds. Now RAP4 is able to guarantee the highest-quality product and provide continuous availability!" Not a single "fact" in the

foregoing statement is true, either individually or when considered as a whole. Defendant RAP4 posted the foregoing to its website at the direction of Defendant TRAN for the purpose of inducing individuals to switch suppliers from ATO to Defendant RAP4 because he knew he could no longer state that PepperBall® projectiles were not available from PepperBall Technologies, and because availability, quality, and effectiveness are all material considerations when purchasing defense equipment, the failure of which could result in the need to use lethal force. Since making these claimed improvements (just days after Defendants RAP4 and TRAN were confronted with the evidence of their infringement), ATO has requested evidence that any aspect of counterfeit product has been "improved" and is anything other than a knock-off of ATO's products which are protected by both trademark and trade secret. All Defendants, either directly or indirectly, have refused to produce any evidence that their product is anything but a poor quality knock-off of a PepperBall® projectile.

22. Defendants RAP4 and TRAN only removed the infringing items from RAP4's website at ATO's request prior to a meeting with ATO's officers in Las Vegas, Nevada. At this meeting it was learned that Defendants SUN and APON were representing that they had obtained not only the original formulas but also the machinery used by PepperBall Technologies, Inc.

23. ATO informed Defendant RAP4 and all of its officers that were present at the meeting (including Defendant TRAN) that: Defendant APON never received formula from PepperBall Technologies, Inc.; that all APON did was assemble the parts; that the machinery used by PepperBall Technologies, Inc., was still in possession of ATO or ATO's agent. ATO via its officers present at this meeting again repeated ATO's demand that Defendant RAP4 and

7

TRAN stop selling counterfeit PepperBall® projectiles and publish a retraction.

24. Defendants RAP4 and TRAN intimated that PepperBall Technologies, Inc.'s former COO (Defendant SUN) had provided Defendant APON with the original formulas and specifications, and Defendant TRAN stated that Defendant RAP4 would only stop selling Defendant APON's product if ATO agreed to meet Defendants RAP4's and TRAN's extortionate demands (which included *inter alia* agreeing to acquire all of the counterfeit PepperBall® projectiles Defendant RAP4 had contracted to buy from Defendants APON and SUN).

25. After ATO stated that Defendant SUN had stolen ATO's trade secrets, and in any event could not have provided Defendant APON with the machinery used to make PepperBall® projectiles, and then refused Defendants RAP4's and TRAN's extortionate demands; Defendant RAP4 resumed selling the counterfeit PepperBall® projectiles on its website along with false statements regarding the origin of RAP4's projectiles and the quality, consistency, and availability of ATO's authentic PepperBall® projectiles.

## Count I — Infringement of a Registered Trademark Pursuant to 15 U.S.C. § 1114
(All Defendants)

26. ATO realleges and incorporates by reference paragraphs 1 — 25 as if fully alleged herein.

27. ATO is the owner of the registered trademark "PEPPERBALL" (USPTO Registration # 2716025).

28. ATO has placed "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus ® on its advertisements and products over the years, including on documents that were sent to each and every Defendant.

8

29. On information and belief, Defendants were all aware of the registration of the PepperBall trademark registration.

30. A search of Defendant RAP4's website for the term "pepperball" returns 44 items, 13 of which are powder filled projectiles designed to force compliance without having to result to potentially lethal force. The picture used by Defendant RAP4 on its website shows projectiles that are identical in color and graphic design to ATO's products.

31. A search of Google for the term "pepperball" results in the first link being to ATO's PepperBall® website (PepperBall.com for which ATO holds a service mark). The second link is to Wikipedia which cites the ATO's marketing materials as its source of information about pepperballs. The third link is to Defendant RAP's website and the link highlighting the fact that PepperBall Technologies, Inc. was foreclosed on and intimating that now Defendant RAP4 is the sole source for PepperBall® projectiles.

32. Each Defendant despite having actual knowledge of the fact that PepperBall Technologies was still in business and selling PepperBall® projectiles without any problem of satisfying consumer demand, and the fact that PepperBall® was and is a registered trademark, represented to their respective customers (i.e., Defendants APON and SUN to Defendant TRAN & Defendant TRAN to ATO's customer list and the general public), that they were selling actual PepperBall® projectiles, and later than they were selling a product identical to PepperBall® projectiles as they were supposedly made by PepperBall Technologies, Inc.'s OEM supplier (which Defendant APON is not and has never been).

### Count II - Infringement of a Trademark Pursuant to 15 U.S.C. § 1125(a)
(All Defendants)

33. ATO realleges and incorporates by reference paragraphs 1 — 25 and 27 - 32 as

9

if fully alleged herein.

34.   On information and belief each Defendant is participating in a scheme to import from Mexico, for sale in the United States, powder filled projectiles designed to force compliance with law enforcement by non-lethal means, while maintaining that these projectiles were made using PepperBall Technologies, Inc.'s formulas and equipment and are being made by the same company that manufactured PepperBall® projectiles for ATO.

35.   ATO and PepperBall Technologies Inc. manufactured PepperBall® projectiles component parts (powder and shells) in the United States. Only a portion of PepperBall® projectiles were assembled outside of the United States by Defendant APON or a member of Defendant APON's corporate family.

### Count III - Common Law Trademark Infringement and Unfair Competition
(All Defendants)

36.   ATO realleges and incorporates by reference paragraphs 1 — 25, 27 – 32, and 34 – 35 as if fully alleged herein.

### Count IV — Deceptive Comparative Advertising in Violation of 15 U.S.C § 1125(a)
(Defendants RAP4 and TRAN)

37.   ATO realleges and incorporates by reference paragraph 36 as if fully alleged herein.

38.   After being informed that the projectiles it was selling were the result of misappropriation of ATO's trade secrets, Defendant RAP4 at the direction of Defendant TRAN modified its website to claim that the projectiles RAP4 sold by RAP4 were improved over the version sold by ATO.

39.   Not every consumer of ATO's product is going to inquire of ATO if the

Defendant's claims of an "improved" product are true. Nor is the typical consumer going to have knowledge that Defendant RAP4's product suddenly "improved" only after Defendant RAP4 was informed that it was infringing on ATO's trademark, was selling a product that was entirely the result of conversion, and that ATO intended to exercise its legal rights if Defendant RAP4 did not immediately cease and desist from further sales of knock-off PepperBall® projectiles.

40. The projectiles being sold by Defendant RAP4 are nothing more than a knock-off of ATO's trademarked and trade secret protected PepperBall® projectiles. Defendant's knock-offs were incapable of being perfected (i.e., matching ATO's product quality) prior to Defendant SUN leaving PepperBall Technologies, Inc.'s employment.

### Count V - Counterfeiting in Violation of 15 U.S.C. § 1114
(Defendants RAP4 and TRAN)

41. ATO realleges and incorporates by reference paragraphs 36 and 38-40 as if fully alleged herein.

42. Defendant RAP4 at the direction of Defendant TRAN included the ATO's trademark on its website as part of a claim that its projectiles originated from the same source as ATO's.

43. Defendant after being alerted to the fact that this was false, modified its website to continue referring to ATO's trademark and ATO while trying to immunize itself from liability with a sham disclaimer that its product was not related to ATO's trademarked products. Defendant RAP4 made this claim in bad faith because just days earlier, Defendant RAP4 was promoting its projectiles as supposedly being from the same source, formula, and machinery as PepperBall Technology's projectiles. Suddenly and without explanation, and on

11

information and belief without having received a new shipment of projectiles, Defendant RAP4's projectiles were "improved" over PepperBall Technologies, Inc.'s PepperBall® projectiles.

44. ATO's trademark is registered with the U.S. Patent and Trademark office for use on "non-lethal weaponry, namely, non-lethal projectiles; launch devices for non-lethal projectiles; non-lethal substances for use in non-lethal projectiles, namely, liquid and non-liquid materials, namely, water, inert or irritant powders..."

45. ATO has never authorized any of the Defendants to sell any non-lethal projectile product manufactured by ATO from any origin other than an Authorized PepperBall Technologies distributor. Defendants APON and SUN have never been authorized to sell PepperBall Technologies products.

46. Defendants RAP4 and TRAN were customers of ATO, were aware that ATO's product was available only from the ATO, were easily capable of determining that there had been no interruption in the supply or quality of ATO's PepperBall® projectiles, and chose to begin selling despite this knowledge, and to continue selling even after receiving a cease and desist letter from the ATO.

### Count VI — Breach of Contract
(Defendant SUN)

47. ATO realleges and incorporates by reference paragraph 36 as if fully alleged herein.

48. Defendant SUN was employed by PepperBall Technologies, Inc., as its Chief Operating Officer. As part of becoming PepperBall Technologies., Inc's COO, Defendant SUN signed a non-disclosure agreement in which he promised to *inter alia* "to maintain the

confidentiality of all Confidential Information, both during and subsequent to any periods of employment with the Company, and employee will not, without express written authorization by the Company, directly or indirectly reveal or cause to be revealed any such Confidential Information to any person other than to Company employees who are authorized to receive such Confidential Information in order to perform their duties for the Company, nor will Employee use any such Confidential Information to the detriment of the Company or its Customers or other than in the course of his employment with the Company, and in no case will the employee use this data for the employee's own personal gain."

49. ATO has only recently learned that sometime between six and twelve months before Defendant SUN was terminated, he began disclosing ATO's trade secrets to Defendant APON for the purpose of setting up a competitor to compete with PepperBall Technologies, Inc. Defendant SUN never received authorization to disclose PepperBall Technologies, Inc.'s confidential information or retain it for his personal gain.

50. ATO has suffered damages as a result of Defendant SUN breaching his non-disclosure agreement by providing ATO's trade secrets to Defendant APON, and by, on information and belief, sharing ATO's confidential customer list with Defendant RAP4.

### Count VII — Conversion
(Defendant SUN)

51. ATO realleges and incorporates by reference paragraphs 47-50 as if fully alleged herein.

52. At the time Defendant SUN removed ATO's trade secrets from ATO's property and at all times since, Defendant SUN has exerted control over ATO's property for purposes which he explicitly promised never to do.

53. Defendant SUN removed and disseminated ATO's trade secrets as part of a conspiracy with Defendant APON to form a business that was in direct competition with ATO.

54. At no time was Defendant SUN authorized to disseminate any of ATO's trade secrets.

55. Defendant SUN as part of his conspiracy to start a competing business with Defendant APON, provided Defendant APON with the projectile mold specifications and PepperBall's formula for the powder PepperBall manufactured for inclusion in PepperBall® projectiles. While still employed with PepperBall Technologies, Inc., Defendant SUN had the engineers employed by PepperBall Technologies, Inc. test and try to remedy the defects in the molds being produced by Defendant APON. Defendant SUN was not authorized to use PepperBall Technologies, Inc.'s employee time to perform quality testing for Defendant SUN's undisclosed competing business. By engaging in the foregoing conduct, Defendant SUN not only converted ATO's trade secrets but also the time it paid its employee's to be working on projects to further ATO's business.

**WHEREFORE**, Plaintiff Advanced Tactical Ordnance Systems, LLC, requests that this Court enter judgment in its favor and against each Defendant and award it:

A. Defendants' profits, any damages sustained by Plaintiff, in an amount to be determined at trial but in no event less than $75,000 against each Defendant;

B. Statutory damages;

C. Treble damages as allowed by the Lanham Act;

D. Prejudgment interest as allowed by 15 U.S.C. § 1117;

E. An injunction enjoining any of the Defendants from manufacturing, advertising,

I. Its costs in this action; and

J. Such other and further relief as the Court deems just and equitable.

Advanced Tactical Ordnance Systems, LLC

By: _____

One of its attorneys

**ATTORNEYS FOR ADVANCED TACTICAL ORDNANCE SYSTEMS, LLC**
SNYDER MORGAN LLP
STEPHEN R. SNYDER, #413-43
200 West Main Street
Syracuse, IN 46567
(574) 457-3300
(574) 457-2056 (fax)
srs@snydermorgan.com

in association with

MILTON M. BLUMENTHAL & ASSOCIATES
MICHAEL L. BLUMENTHAL, ESQ.
105 W. Madison St., Suite 1004
Chicago, Illinois 60602
(312) 372-3566
(312) 372-3573 (fax)
mike@mmblumenthal.com