UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ADVANCED TACTICAL ORDNANCE ) <br> SYSTEMS, LLC, an Indiana limited liability ) <br> company, (d/b/a PepperBall Technologies), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> REAL ACTION PAINTBALL, INC., and ) <br> K.T. TRAN, ) <br> ) <br> ) <br> Defendants. ) | 1:12-CV-296 JVB |

**OPINION AND ORDER**

Plaintiff, Advanced Tactical Ordnance Systems, LLC, ("ATO") sued Real Action Paintball, Inc. ("RAP4"), and K.T. Tran (and others who have now been dismissed) alleging trademark infringement and various state law violations.

On August 16, 2013, the Court preliminarily enjoined Defendants from manufacturing, advertising, selling, or otherwise using---under the guise of Plaintiff's trademark---projectiles filled with pepper powder that are generally used in military or law enforcement operations. The Court now addresses Plaintiff's motions for sanctions against Defendants.

**A. Plaintiff's Motion to Enter Default as a Sanction Against Defendants**

Plaintiff claims that there was a conspiracy between Defendants and their counsel to cancel Plaintiff's trademarks without their knowledge. They ask this Court to sanction Defendants by entering a default judgment against them on all of Plaintiff's claims. To this end,

1

Plaintiff presented evidence that Defendant Tran submitted a petition to the United States Patent and Trademark Office ("USPTO") with the following misrepresentations:

- the trademarks in issue were not presently involved in litigation;
- Plaintiff could be reached at the address the USPTO had on file;
- Defendants served a copy of the petition for cancellation on Plaintiff; and
- PepperBall Technologies, Inc., had ceased operations on January 8, 2012, and that "the owner of the marks that are the subject of the registration ceased doing business and abandoned the marks/registrations."

While the last representation falls within the theory of Defendants' defense that Plaintiff's purchase of PepperBall Technologies assets was invalid and that Plaintiff never received from PepperBall Technologies an assignment of the PepperBall trademark, the other three claims were indeed false. Although this says volumes of Defendants' lack of probity, Plaintiff seeks a remedy against them in the wrong venue. Since Plaintiff alleges that Defendants attempted to perpetrate a fraud upon the USPTO, then its motion for sanctions should be filed there. In any case, "a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing." *Sun v. Bd. of Trustees of Univ. of IL*, 473 F.3d 799, 811 (7th Cir. 2007). For these reasons, the Court will deny Plaintiff's motion for default judgment (DE 209).

**B. Plaintiff's Three Motions to Hold Defendants and their Counsel in Contempt**

Plaintiff alleges that, after the Court modified the Temporary Restraining Order, Defendants resumed selling the accused projectiles, rather than segregating and preserving them as required by the TRO.

Plaintiff also alleges that Defendants and their counsel, Paul Overhauser, prevented its counsel, David Piell, from inspecting the projectiles that the Court ordered segregated and preserved. According to Mr. Piell, he was in California for a family function and used the opportunity to visit Defendants' facilities. He got there on October 26, 2012, at 1 p.m., and was told by Defendant Tran that he could inspect the stock once the employees resumed work after the company picnic. Meanwhile, Mr. Piell confirmed with Magistrate Judge Cosbey's chambers that Judge Cosbey was available in case any dispute arose. As it turned out, Mr. Piell was led to believe that he'd be accessing the facility, until he finally talked to Mr. Overhauser, who told him that he would not be granted access to the facility without forty-eight-hours notice. By this time, Judge Cosbey was gone for the evening. Mr. Piell believes that Mr. Overhauser intentionally waited until Judge Cosbey was no longer available before telling him that no access would be granted to him.

Finally, according to Plaintiff, Defendants most recent and most explicit violation yet occurred just a couple of months ago. At some point shortly before or during the week of July 11, 2013, Defendants won two auctions on FedBiz.com to supply authentic PepperBall projectiles and related equipment. The bid form did not use the same capitalization (it referred to Pepperball instead of PepperBall) but both bids required part numbers unique to Plaintiff's PepperBall brand products. In submitting their bid, Defendants were required to check boxes confirming that they were supplying Plaintiff's products. The two agencies involved later cancelled the contracts with Defendants.

The alleged violations relate to two sections of the TRO:

- "[Defendants are barred from manufacturing, shipping, selling or otherwise disposing of, or advertising or offering for sale projectiles filled with irritant causing powder that bear likeness of the projectiles manufactured and sold by Plaintiff." (DE 45 at 2.)
- Defendants are to immediately segregate and preserve, and to permit [Plaintiff] or its designated representatives to inspect, and inventory, all projectiles filled with irritant causing powder that bear the likeness of the projectiles manufactured and sold by Plaintiff, all molds for making all projectiles manufactured and sold by Plaintiff, and all other articles, literature, documents and materials used for making, advertising, selling or distributing the projectiles filled with irritant causing powder that bear the likeness of the projectiles manufactured by Plaintiff . . ." (DE 54 at 2.)

Defendants deny that they violated the TRO when they resumed the sales of the accused projectiles. In fact, they claim that it was impossible for them to violate the TRO because the TRO prohibited selling of projectiles bearing the likeness of projectiles manufactured by Plaintiff whereas Plaintiff does not manufacture any projectiles. As for denying Mr. Piell's access to inspect their projectile stock, Defendants maintain that they were entitled to advance notice of the inspection pursuant to Federal Rule of Civil Procedure 34 so that it could be carried out at a reasonable time, place, and manner.

Defendants are also denying that they did anything wrong when they bid to be a PepperBall projectile and related equipment supplier on FedBiz.com. They insist that the request for PepperBall bids was for generic projectiles filled with pepper powder and related products.

The party seeking to sustain a claim of contempt

> has the burden of proving all of the following elements by clear and convincing evidence: (1) the Order sets forth an unambiguous command; (2) [the contemnor] violated that command; (3) [the

4

> contemnor]'s violation was significant, meaning it did not
> substantially comply with the Order; and (4) [the contemnor] failed
> to take steps to reasonably and diligently comply with the Order.

*Prima Tek II v. Klerk's Plastic Indus., BV*, 525 F. 3d 533, 542 (7th Cir. 2008) (citing *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir.1995); *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989)).

Plaintiff has successfully shown that, not long after the TRO was modified, Defendants began selling the infringing products. True, the projectiles had a marking unique to Defendants, but the marking was so small that, at one of the hearings, the Court was unable to find it even with the help of a magnifying glass. In doing so, Defendants violated the prohibition in the TRO no to sell products bearing the likeness of projectiles filled with irritant causing powder manufactured and sold by Plaintiff. Defendants' argument that Plaintiff does not manufacture such projectiles is futile, given that Plaintiff presented evidence through Gary Gibson and Jared Fox that Plaintiff manufactures PepperBall projectiles at its 50% owner's (Perfect Circle Projectiles, LLC) facility.

However, Plaintiff did not establish that the violation was significant, and, as a result, the Court exercises its discretion not to award sanctions on the first instant of the violation. Moreover, shortly after Plaintiff brought this matter to the Court's attention, Defendants began marking their pepper powder filled projectiles with their own lettering clearly visible to the naked eye. Plaintiff insists that those projectiles violated the TRO as well because, despite their unique markings, they bear the same colors as Plaintiff's projectiles. In addition, according to Plaintiff, those projectiles were removed from the stock that was supposed to be reserved and segregated under the Court's TRO.

As to the latter claim, Plaintiff has not submitted sufficient proof that the projectiles came from the stock that was to be segregated. And the fact that the colors matched, without more, is not enough to show a violation of the TRO given that Defendants clearly identified the projectiles as their own. (That is not to say that, at some point, Plaintiff may not recover damages as a result of these projectiles being sold, for example if Plaintiff prevails in its claim that Defendants converted its trade secrets.)

Similarly, the Court will not award sanctions for Defendants' failure to allow Mr. Piell to inspect their facility. Plaintiff is correct that Mr. Piell did not need a Rule 34 notice as the TRO contemplates even unannounced inspections so long as they are reasonable. But given that this was the first time Defendants refused Mr. Piell, the Court exercises its discretion against awarding sanctions.

But not so with the third alleged infraction. Defendants' decision to put themselves out to the federal government as suppliers of Plaintiff's PepperBall brand products was in direct violation of the TRO. The FedBiz.com website called for bids for specific, not generic, PepperBall products, identified by part numbers unique to Plaintiff. Yet Defendants pursued the bids, and won, knowing that they were prohibited by the TRO from "shipping, selling or filling orders for PepperBall projectiles with any projectiles other than genuine projectiles made by and obtained from Advanced Tactical Ordnance Systems, LLC." (DE 45 at 2.)

At the evidentiary hearings in support of its motion for preliminary injunction, Plaintiffs showed that Defendants' projectiles were of inferior quality and could pose a danger to their users, which in turn could ruin Plaintiff's reputation in case of an unaware buyer.

As contentious as this litigation has been, both parties have mud on their hands. But to its credit, no one on Plaintiff's side has come off as a liar. Yet, Defendants have lost credibility with

this Court. Although their counsel attempts to rehabilitate them, their action of affirming under oath on the FedBiz.com forms that they are legitimate providers of PepperBall products, even in light of the existing TRO, dooms their defenses. In short, the Court finds that its order prohibiting Defendants from "shipping, selling or filling orders for PepperBall projectiles with any projectiles other than genuine projectiles made by and obtained from Advanced Tactical Ordnance Systems, LLC," was unambiguous. Defendants violated the TRO, the violation was significant, and Defendants failed to take steps to reasonably and diligently comply with the TRO. As is their right, Defendants appealed the Court's preliminary injunction order to the Seventh Circuit, at the same time asking this Court to reconsider it. Those are the appropriate means for challenging the Court's ruling, not a blatant disregard of the Court's authority.

Although Plaintiff claims that it lost a sale to the State Department worth $40,328 and it requests that amount as a sanction award, it does not provide any conclusive evidence that it would in fact have been the winner of the bid. Nevertheless, the Court agrees with Plaintiff that the sanction has to be significant enough to deter Defendants from further violations of the Court's orders. To this end, the Court will impose a fine of $10,000. In addition, Defendants must pay for Plaintiff's attorney's fees for filing the third motion for sanctions (DE 332).

### C. Conclusion

For the reasons stated above, the Court---

- Denies Plaintiff's Motion to Enter Default as a Sanction Against Defendants (DE 209);
- Denies Plaintiff's first (DE 88) and second (DE 101) motions for sanctions; and
- Grants Plaintiff's third motion for sanctions (DE 332).

Defendants must pay Plaintiff through their attorneys a $10,000 fine within seven days of this order. After the fine is paid, Plaintiff's counsel should so notify the Court.

Within fourteen days of this order, Plaintiff must submit to this Court an accounting for its attorney's fees as explained above. Defendants shall have fourteen days to respond. Plaintiff may file a reply within seven days.

SO ORDERED on September 30, 2013.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE